IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
(NASHVILLE DIVISION)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NASHVILLE SENIOR LIVING, LLC., et al.,[1] | ) | Case No. 08-07254 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Paine |

**Response Deadline: October 20, 2008**
**Hearing: October 21, 2008**

**OBJECTION TO DEBTORS' MOTION FOR AN ORDER (A) APPROVING THE
ENTRY BY CAROLINA DEBTORS INTO ASSET PURCHASE AGREEMENT
AND AUTHORIZING THE SALE OF PROPERTY OUTSIDE THE ORDINARY
COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF PROPERTY FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS
PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE BANKRUPTCY
CODE; (C) AUTHORIZING THE DISBURSEMENT OF PROCEEDS OF SALE;
(D) APPROVING BID PROCEDURES AND OVERBID PROTECTIONS; (E)
SCHEDULING AUCTION AND SALE HEARING; (E) [sic] APPROVING THE
FORM AND MANNER OF NOTICES; AND (F) GRANTING RELATED RELIEF**

The Official Committee of Tenants in Common (the "Committee")[2], by its

undersigned counsel, objects to the Debtors' Motion for an Order Approving the Entry by

Carolina Debtors into Asset Purchase Agreement and Authorizing the Sale of Property

---

[1]  The Consolidated Debtors in these cases are Nashville Senior Living, LLC, Anderson Senior Living
Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant
Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC,
Winston-Salem Oakdale Property, LLC, Briarwood Retirement and Assistant Living Community, LLC and
Century Fields Retirement and Assisted Living Community.
[2]  The Anderson Family Trust dated March 13, 1990; B & T Smith's Carolina 7, LLC; Bai's Carolina 7,
LLC; Brandt's Carolina 7, LLC; Buck's Carolina 7, LLC; Camry's Carolina 7, LLC; Carney's Carolina 7,
LLC; Chen's Carolina 7, LLC; Fener's Carolina 7, LLC; Funk's Carolina 7, LLC; Golay's Carolina 7,
LLC; Gunnoe's Carolina 7, LLC; Hawley's Carolina 7, LLC; Hodson's Carolina 7, LLC; J Fischer's
Carolina 7, LLC; Lewis' Carolina 7, LLC; Liang's Carolina 7, LLC; M Fischer's Carolina 7, LLC; Nash's
Carolina 7, LLC; Parker's Carolina 7, LLC; Pestana's Carolina 7, LLC; Rigali's Carolina 7, LLC; S
Smith's Carolina 7, LLC; Silversage's Carolina 7, LLC; Slakey's Carolina 7, LLC
Smith's Carolina 7, LLC; Sturza's Carolina 7, LLC; Tichinin's Carolina 7, LLC, and; Waldau's Carolina 7,
LLC, join in this objection in their individual capacities.

Outside the Ordinary Course of Business and for other further relief (the "Expedited Motion"), and states as follows:

## PRELIMINARY STATEMENT

Although it is impossible to discern from the Expedited Motion, the thirty tenant in common owners that are represented by the Committee (the "TIC Owners") are the only constituency with an economic stake in the outcome of these proposed sales. As a result of solicitations made by the Debtors' affiliates, the TIC Owners, contributed more than $ 11,000,000 in capital to the Debtors. See Schedule of Purchasers attached as Exhibit A. On information and belief, none of the Debtors contributed any capital to acquire the properties that are the subject of the Expedited Motion and have not invested any funds since the properties were acquired. Similarly, because the proposed sales are for less than the amount of the debt owing on these properties, the Debtors' estates will receive no benefit if the instant motion is approved.

In contrast, the investments made by the TIC Owners will be completely lost and because the investments were structured as a 1031 Exchange, each of the individual TIC Owners will incur significant tax liabilities if the sale is consummated as presently structured. The TIC Owners are not idle, wealthy investors as represented in the Debtors' papers and they have never represented that they consented to a sale of their ownership interests by the Debtors. They are instead a disparate group of individuals who in many cases invested their life savings with the Debtors and seek to be actively involved in a deliberate restructuring process that takes account of their interests.

The instant motion and sale are proposed in a bad faith attempt to financially benefit affiliates of the Debtor without giving any consideration to the

interests of the TIC Owners. The Debtors conspired with their affiliated Master Tenant to stop making debt service payments, diverted funds from debt service payments to pay their legal fees in this proceeding and have negotiated a sales price which by "coincidence" matches the proportion of debt they owe to the secured lender and is insufficient to pay any portion of the $14 plus million of debt assumed by the TIC Owners.

        The Debtors completely excluded the TIC Owners from the sales process providing no information with respect to expressions of interests, potential sales structures, amounts being offered, or draft contracts. The Debtors went so far in their efforts to exclude the TIC Owners that just four days before the Expedited Motion was filed they refused to provide any information about the Five Star contract to counsel for the Committee claiming that the information, which they knew would be publicly available just a few days later, was confidential. At the time they gave no indication that the Expedited Motion was imminent.

        Even if the Debtors had acted in good faith, the Expedited Motion could not be approved in the form submitted. Fundamental terms are missing from the proposed Contract including the actual price being paid, allocations of price among the Debtors' estates, and benefits being conferred on other Sunwest affiliates. The Debtors also lack authority to sell many of the assets/contract rights they are purporting to sell and assign because they are owned by other Sunwest affiliates and are not property of the estate. Furthermore, the Contract imposes on the Debtors' estate liabilities which are not liabilities of the Debtors and make the Debtors' estates financially responsible for the actions and inactions of the Debtors' Sunwest affiliates. The proposed contract also

violates the contractual right of the TIC Owners to a right of first offer, and partition, without satisfying any of the requirements of §363(f) as well as the contractual rights of the TIC Owners and their rights under §363(i) of the Bankruptcy Code.

The Debtors' bad faith extends to the proposed bid procedures where the Debtors seek to require a $2.2 million deposit from any potential bidder before they can bid and retains the exclusive right to determine who is a qualified bidder, which is the highest bid, and when to adjourn the auction while entirely excluding the TIC Owners from the auction process.

[remainder of page intentionally left blank]

# TABLE OF CONTENTS

BACKGROUND...................................................................... **6**

ARGUMENT...................................................................... **12**

I      No Emergency Exists Justifying Expedited Treatment
of the Debtors' Request and Expedited Treatment is
Contrary to Proper Consideration of the Relief Requested
Given the Extreme Consequences This Motion Poses to
the TIC Owners.................................................... **12**

II      The Contract Does Not Have a Sound Business Purpose......... **15**

     A.      The Proposed Contract and Expedited Motion
Fail to Disclose the Most Basic Business Terms
of the Proposed Transaction................................ **16**

     B.      The Debtors Lack Authority to Sell Assets They
Purport to Sell in the Contract............................ **17**

     C.      The Contract Exposes the Debtors and the Estate
to Liability for Actions and Events That are
Beyond the Carolina 7 Debtors' Control.................. **19**

     D.      The Contract Imposes Liability on the Estate
for the Liabilities of Sunwest Affiliates................... **21**

     E.      There is No Evidence of the Purchasers' Actual
Ability to Close on the Contract........................... **22**

III      Proposed Sale Violates the Interest of TIC Owners
Property Without Complying with 363(f)......................... **23**

IV      Break-Up Fee is Unreasonable..................................... **25**

V      Bidding Procedures Order Is Unreasonable....................... **26**

VI      The Debtors Are Proceeding In Bad Faith........................ **28**

## BACKGROUND

The properties at issue in the Expedited Motion are jointly owned as tenants in common among the Debtors and unrelated non-debtor entities. The Carolina 7 Debtors[3] are a subset of the Consolidated Debtors. Each of the Carolina 7 Debtors own approximately 60% of different plots of land in each of their respective bankruptcy cases (the "Carolina 7 Properties"). Each of these plots of land is subject to a long term ground lease (the "Master Lease") with an affiliated Sunwest tenant (hereafter referred to as the "Master Tenant" or alternatively "Sunwest Master Tenant") who is responsible for operating the nursing home facility located on that land. The Master Tenant has contracted with another debtor affiliate, Sunwest Management, Inc. ("Sunwest" or alternatively "Sunwest Management") to manage each property.

Sunwest, in addition to general management, provides virtually all of the services used by these facilities through affiliated entities, which include: Senenet Leasing Company, which is a provider of leased employees; Encore Indemnity Ltd., which is an offshore captive reinsurance company that provides general liability, workers' compensation reinsurance and automobile insurance; Fuse Advertising, Inc., which provides marketing services, including printing, design and yellow page placement services; KDA Construction Inc., a construction company that undertakes general repairs or improvement; Canyon Creek Financial, which is a broker-dealer licensed to market and distribute securities offered by affiliates of Sunwest ("Sunwest Financial"); Contract Interiors, LLC, which provides interior design services and furnishing; and Hill Architects, which provides architectural designs. Interestingly, all of the Sunwest

---

[3] The Carolina 7 Debtors include Anderson Senior Living Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC, and Winston-Salem Oakdale Property, LLC.

affiliates were paid in full at the time the bankruptcy petitions were filed, with the payroll

company being prepaid. The TIC Owners collectively own approximately 40% of each

Sunwest Carolina Debtor's property, and represent virtually all of the unsecured creditors

in each Sunwest Carolina Debtor's case. A diagram of the ownership and operational

structure for each of the Carolina 7 Properties is below:



Case 3:08-bk-07254  Doc 262  Filed 10/20/08  Entered 10/20/08 12:13:33  Desc Main
        Document  Page 8 of 36

In order to acquire the capital necessary for the purchase of the seven senior living facilities in North and South Carolina that are the subject of the Expedited Motion, Sunwest Financial engaged in the marketing and solicitation of a tenancy in common interest pursuant to a confidential offering memorandum dated December 11, 2006 (the "Offering Memorandum"). A copy of the Offering Memorandum is attached as Exhibit B. In response to the Offering Memorandum the thirty TIC Owners, who are the only non-Sunwest constituency in this case paid $11,073,632.03 in capital to fund the acquisition. On information and belief, the $11,073,632.03 paid by the TIC Owners was the only capital paid toward the acquisition. Sunwest paid nothing. The balance of the purchase price was funded by $57,820,000 in secured financing provided by GE Business Financial Services, Inc. ("GE") on December 5, 2006 (the "Secured Financing").

The TIC Owners purchased their interest as part of a "like kind" exchange under section 1031 (the "1031 Exchange") of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and as a result will suffer severe financial consequences in the event of an involuntary sale of their interests in the Carolina 7 Properties. See Affidavit of Todd Batiste attached as Exhibit C. Section 1001(a) of the Tax Code provides that taxpayers recognize gain on sales or other dispositions of property to the extent that the amount realized on the sale or other disposition exceeds the adjusted tax basis of the property. Under Treas. Reg. §1.1001-2, the amount realized from a sale or other disposition of property generally includes any liabilities from which the transferor is discharged as a result of the sale or disposition. Generally, the TIC Owners have little, if any, tax basis in their investments because of the 1031 Exchange. See Batiste Affidavit, Exhibit C.

As part of the acquisition the TIC Owners also signed a Debt Assumption and Indemnification Agreement (the "Debt Assumption Agreement") pursuant to which they agreed with the Carolina 7 Debtors to assume responsibility for $ 14,371,404 of the debt owing to GE. A copy of the Debt Assumption Agreement is attached as Exhibit D. On information and belief, the Carolina 7 Debtors contend that after the proposed purchase price is paid only the amounts assumed by the TIC Owners will remain owing since the difference between the proposed sale price and the amount owed to GE equals the amount of debt that was assumed by the TIC Owners. <u>See</u> Debt Assumption Agreement, Exhibit D at pg. 47. The TIC Owners may also realize large discharge of liability gains, on which they will have to pay taxes out of pocket.

The respective rights and obligations between and among the Carolina 7 Debtors and the TIC Owners are governed for each of the seven properties at issue by Tenants-in-Common Agreements. A representative copy of a "TIC Agreement" is attached as Exhibit E. In relevant part, the TIC Agreements require unanimous approval of any sale, transfer or exchange of all or any portion of the Carolina 7 Properties (<u>See</u> TIC Agreement, Exhibit E at ¶ 1.3), a right to partition the Carolina 7 Properties (<u>See</u> TIC Agreement, Exhibit E at ¶ 5.1), and a right of first offer (<u>See</u> TIC Agreement, Exhibit E at ¶ 5.3(a)). These rights and obligations owing from the Carolina 7 Debtors to the TIC Owners are required under the Internal Revenue Code and associated IRS regulations for securitized tenancy in common agreements.

A few days before the bankruptcy, the Debtors entered into a very unusual agreement with GE regarding its attorneys fees. <u>See</u> August 14, 2008 Agreement (the

"August 14 Agreement") attached hereto as Exhibit F. Under the August 14 Agreement, GE "permitted" the Debtor to use rental income to pay its bankruptcy lawyers' retainers.[4]

That rent was proceeds of the Property and it was owned by the Debtors and the TIC investors as tenants in common. Consistent therewith, the Debtors were obligated under the TIC Agreement to share it with the other tenants in common.[5] Indeed, the Sunwest Master Tenant, was continually obligated to the TIC Owners to pay, in the form of rent, the monthly debt service obligations that were owing to the GE. Instead, the Debtors diverted the funds to pay its lawyers. The Debtors and GE agreed that the use of rental income would not reduce the obligations to GE in any way.

Not content with taking the TIC Owners' property to pay prepetition retainers, the Debtors arranged to have their postpetition attorneys fees paid from the TIC Owners' property. GE agreed, in the event of a sale, to disburse a portion of the sale proceeds to the Debtors' bankruptcy lawyers; provided, however, that such disbursement would not be a carve out. See August 14 Agreement, Exhibit F at ¶ 2.

On October 10, 2008, the Debtors filed the Expedited Motion seeking an expedited order approving various sale procedures. In the Expedited Motion the Debtors also seek authorization to enter into an asset purchase agreement with Five Star Quality, Inc. (the Contract is attached as Exhibit G)[6]. The TIC Owners were not involved in the

---

[4] Three law firms received hundreds of thousands of dollars before the Debtors' bankruptcy cases were filed. The sources of those funds are not clear from the declarations filed by counsel.

[5] See TIC Agreement at Para. 3.1 ("all income, revenue and other cash flow derived from the operation of the Property shall be shared by the Tenants in Common in proportion to their respective Fee Interest in the Property; provided, however, that during the term of the Master Lease . . . the Tenants in Common shall be entitled only to Rent. . . payable under the Master Lease . . .").

[6] On September 4, 2008, the Carolina 7 Debtors commenced adversary proceedings against the TIC Owners seeking authority pursuant to 11 U.S.C. §363(h) to sell the TIC Owners' interests with the Carolina 7 Debtors' interests (the "Adversary Proceedings"). The pre-trial conferences for these Adversary Proceedings are scheduled for November 3, 2008. Despite this outstanding issue, the Debtors now seek an Expedited Order that would effectively circumvent §363h) and whether the TIC Owners' interests can even

sales process, and in fact, were prevented by the Debtors from having any involvement. The TIC Owners did not, as stated in the Expedited Motion, ever consent to or support a sale of their ownership interest.

Payment on the Secured Financing was to be made by another Sunwest affiliate, the master tenant at each facility (the "Sunwest Master Tenant"). The Sunwest Master Tenants own and operate the Carolina 7 Properties pursuant to a 50 year Master Lease. The Sunwest Master Tenant has stopped making payments on the Secured Financing. On information and belief, the Debtors have made no effort to demand that payments be made by their affiliated Master Tenant and have instead directed rent payments to pay for their legal fees in these cases.

## ARGUMENT

I. **No Emergency Exists Justifying Expedited Treatment of the Debtors' Request and Expedited Treatment is Contrary to Proper Consideration of the Relief Requested Given the Extreme Consequences This Motion Poses to the TIC Owners.**

The Debtors fail to make any showing to substantiate why the proposed sale to Five Star Quality, Inc. (the "Purchaser") or the accompanying bid procedures should be given expedited treatment. Pursuant to Local Rule 9075-1 expedited motions and orders are supposed to be "those rare matters requiring action on notice shorter than that fixed by the Federal Rules of Bankruptcy Procedure." The motivations described in this "Expedited" Motion hardly rise to the level of "rare" and appear to be nothing more than a desire by the Carolina 7 Debtors to prevent a fair vetting of the contract and sale procedures it is proposing.

---

be sold by the Debtor by asking the Court to approve a $500,000 break-up fee and bidding procedures for just such a sale.

The Carolina 7 Debtors assert that an expedited order is necessary for orderly disposition of the property while minimizing delay. Yet there is plenty of time for an orderly sale process to potentially occur before the Contract's currently proposed drop dead date of December 31, 2008. Moreover, this "deadline" is artificial. The Expedited Motion and Contract contemplate further extension of any closing to January 31st and beyond. See Contract, Exhibit G, at ¶10(b). There is nothing orderly about proceeding with the Expedited Motion on the timeline currently proposed by the Carolina 7 Debtors. For the reasons stated below, the Expedited Motion and Contract omit critical information, so commingle the Debtors with their affiliates that separating rights and obligations is impossible, and are contingent upon the outcome of pending litigation that will not be decided until at the earliest November and likely well into 2009.

The Carolina 7 Debtors also claim that expedited treatment is necessary to maximize the value to the estate. Yet, there is no value to the estate from the proposed sale because no net sales proceeds will be paid to the Carolina 7 Debtors' estates. Furthermore, by providing less time for potential bidders to come forward, the Committee believes the Carolina 7 Debtors are actually hindering the ability of the estate to attain the highest possible bid for the properties. The Carolina 7 Debtors assert that a previous stalking horse bidder backed away from a deal and use this as justification for rushing approval of the Contract. To the contrary, this bidder's interest illustrates that other bidders are potentially interested in bidding on the Carolina 7 Properties. These additional bidders should be afforded adequate time and information to submit a potential bid.

The expedited treatment sought by the Debtors also denies the TIC Owners any ability to conduct discovery or make a meaningful assessment of the proposal. There is no time to assess whether a fair market price is being paid; take a deposition of CBRE; understand CBRE's marketing efforts; take a deposition or serve discovery on the Purchaser to understand its ability to consummate the sale; or serve discovery on the Debtors and their affiliates to understand how the Debtors plan to distribute proceeds or liabilities among themselves, the TIC Owners or the Sunwest affiliates.

This is an emergency that is entirely of the Debtors' creation. The Debtors have been working on this proposed sale for more than three months. During this time, the TIC Owners have been purposely excluded from the sales process. In fact, the Debtors and their counsel have gone out of their way to conceal the terms of the proposed Contract. As recently as four days before the Expedited Motion was filed, counsel for the Committee contacted Debtors' counsel and asked about the status of the Debtors' marketing efforts, as well as for a copy of any contract being negotiated. Attorneys for the Debtors delayed releasing a draft of the Contract until just twenty-four hours before publicly disseminating that very same Contract, feigning a need for confidentiality as to its contents, all the while making no mention of the instant sale motion that was filed twenty-four hours later at 8:06 p.m. EST on a Friday evening before a holiday weekend.

Any consideration of the Contract let alone expedited consideration is also premature. The Debtors do not have approval pursuant to §363(h) permitting a sale of the TIC Owners' interests in the Carolina 7 Properties. A separate adversary proceeding

filed pursuant to §363(h) is pending before the Court , but is not scheduled for pre-trial conference until November 3rd.

Given the gravity of the proposed sale on the TIC Owners, proceeding on shortened notice is inherently unreasonable. The TIC Owners are primarily retirees who invested a large portion of their retirement and life savings into the Carolina 7 Properties after solicitation of these investments by Sunwest affiliates. These retirees are now being forced to return to the workforce to make up for the lost income from their investment, and others who are unable to work fear they may not be able to meet their expenses as a result. Time did not permit statements to be assembled from each of the TIC Owners, but the statements of Andrew Golay and Todd Batiste, that are attached as Exhibits C & H, are representative of their circumstances.

The sale proposed by the Carolina 7 Debtors, who invested no equity in the Carolina 7 Properties, will subject the TIC owners to significant tax liabilities since the TIC Owners purchased their interests through 1031 Exchanges. The TIC Owners should at a minimum be afforded a full and fair opportunity to vet any proposed sale and present their arguments to the Court in an orderly and complete fashion. Proceeding on four business days notice is inherently unreasonable.

## II.     The Contract Does Not Have a Sound Business Purpose.

The test in the Sixth Circuit for whether a sale outside of the ordinary course of business may be approved by the Court is whether the contract has a sound business purpose. Stephens Industries Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986) (adopting the reasoning of the Second Circuit's sound business purpose test for the approval of a sale of all of a Chapter 11 debtor's assets). In order for a sale to have a

sound business purpose it must have a sound business reason, be for an adequate price, be proposed in good faith, and afford interested parties accurate and reasonable notice. In re Country Manor of Kenton, Inc., 172 B.R. 217, 220 (N.D. Ohio 1994) (denying the sale of personal property of a nursing home facility free and clear of liens). For reasons stated in further detail below, the Contract does not have a sound business purpose and the Expedited Motion must be denied.

A.     The Proposed Contract and Expedited Motion Fail to Disclose the Most Basic Business Terms of the Proposed Transaction

Neither the Contract nor the Expedited Motion provide enough information for the Court to make a finding of a sound business purpose. The Contract is missing basic terms and is simply incomplete. The price being paid is subject to unknown downward adjustments and is not allocated among the Debtors' estates. The terms of the Contract also fail to reveal who is being paid the proceeds of the sale as well as the benefits being provided to affiliates of Sunwest.

Given the lack of information provided by the Carolina 7 Debtors as to the sales process and the extreme speed with which the Expedited Motion is being brought forth by the Debtors, it is also impossible to make any determination regarding the adequacy of the price being offered. Paragraph 4 of the Contract provides for a lump sum purchase price of $44 million with no disclosure regarding what amount of the lump sum will be allocated to each jointly administered debtor. Similarly, no disclosure is made by the Carolina 7 Debtors as to how the proposed purchase price of $44 million is

being allocated to each of the assumed debt obligations among the Carolina 7 Debtors and the TIC Owners.[7]

It is also impossible to determine the actual purchase price being paid under the Contract because it is subject to adjustment for expenses incurred prior to the closing date (See Contract, Exhibit G at ¶ 14(a)), and no disclosures are made as to the contracts that are to be assumed as part of the purchase price. See Contract, Exhibit G at ¶ 7. Any unassumed contracts are to be terminated at the liability and expense of the Debtors. See id.

The Debtors also fail to disclose which Sunwest affiliates will be paid as a result of the sale. As described in more detail below, the Contract purports to sell numerous assets that are not owned by the Carolina 7 Debtors and impresses liability on the Carolina 7 Debtors that are not currently liabilities of the estates. Many of the assets being sold and liabilities being assumed by the Debtor belong to the Sunwest Master Tenant and/or other Sunwest affiliates. Yet no disclosures of any kind are made to quantify or justify the inclusion of these assets and liabilities in the sale.

B.      The Debtors Lack Authority to Sell Assets They Purport to Sell in the Contract

Section 363 authorizes a Debtor to sell "property of the estate." Property of the estate is defined in section 541 of the Bankruptcy Code as "all legal or equitable interest **of the debtor** in property as of the commencement of the case." In paragraphs 1(c) and (d) of the Contract, the assets being sold are to include the Carolina 7 Debtors' right, title and interest in all tangible personal property including moveable trade fixtures, furniture, motor vehicles, personal computers, medical equipment, care plans, and

---

[7]  This allocation will directly impact the tax obligations of the TIC Owners' forgiveness of indebtedness income.

resident medical records. Only the Master Tenant and/or other non-debtor affiliates of Sunwest own these items. See Master Lease attached as Exhibit I, Art. 1. The Carolina 7 Debtors in these bankruptcy cases own an interest in land. The Contract does not discuss how the Carolina 7 Debtors will compensate, if at all, these defaulting non-debtor affiliates for the sale of their property.

The Contract also purports to transfer the business operations of the nursing homes located on the Carolina 7 Properties. See Contract, Exhibit G at ¶¶ 1(c), 1(d) & 1(e). Once again, these business operations are entirely controlled by the Master Tenant and Sunwest management affiliate. Neither the Debtors nor the TIC Owners have any day-to-day operational control over these matters. Indeed, as described in more detail above, the TIC Agreement, pursuant to IRS Regulations, expressly forbids such operational control. See TIC Agreement, Exhibit E at ¶ 2.2. Nowhere in §541 does property of the estate include a non-debtor affiliate's property in which the debtor has no legal or equitable interest. As such, the Debtors have no authority under the Bankruptcy Code or otherwise to sell the personal property and nursing home management business of the Sunwest Master Tenant.

Finally, a sale of the TIC Owners' interests in the land and improvements that are the subject of the Contract can only be accomplished if they consent or the Debtors receive approval for the sale pursuant to section 363(h). Although the Contract is contingent upon approval of the Debtors' 363(h) motion, the Debtors have not received such authority and should not be permitted to secure an order permitting a sale until the section 363(h) motions are decided.

C. The Contract Exposes the Debtors and the Estate to Liability for Actions and Events That are Beyond the Carolina 7 Debtors' Control.

Pursuant to the proposed Contract, the Carolina 7 Debtors give numerous representations, warranties, and covenants as to matters over which they have no power or control. Amazingly a breach of any one of these representations, warranties, or covenants will expose the estate to liability. These representations, warranties and covenants include:

- The resident agreements are valid and complete. Contract at ¶ 8. *The resident agreements are solely in the control of the Sunwest Master Tenant and Sunwest Management who are the signatories to these agreements. The Debtors have no authority as to these agreements.*
- The contracts provided are correct and complete. Contract at ¶ 8. *The operating contracts are solely in the control of the Sunwest Master Tenant and Sunwest Management. The Debtors are not a party to any of the referenced contracts.*
- The Debtors maintain all healthcare licenses and approvals. Contract at ¶ 8. *The Debtors have no licenses and can secure no approvals as operational control is vested with the Sunwest Master Tenant and Sunwest Management.*
- The schedule of employees is true, accurate and complete. Contract at ¶ 8. *The Debtors have no operational authority or contract from which to make representations about employees.*
- There are no ERISA violations by any Debtor affiliate. Contract at ¶ 8. *The Debtors have no operational authority or control.*
- The operating agreements of the Master Tenant are complete and accurate. Contract at ¶ 8. *The Debtors have no operational authority or control.*
- The Debtors shall provide the Purchaser with schedules containing information regarding the facility employees including their position, job description, rate of pay, and benefits. Contract at ¶ 12(a). *The Debtors have no operational authority or control from which to make these representations.*
- The Debtors will terminate the employees at each facility and be responsible for severance pay, wages, and benefits accrued. Contract at ¶ 12(d). *The Debtors have no power to do as they do not employ the staff at the facilities.*
- Upon closing the Debtors will provide the Bill of Sale, the Assignment and Assumption of Resident Agreements, and the

Assignment of Rights. Contract at ¶ 13(b). *The Debtors have no authority to do since they are not parties to the agreements and do not have the authority to sign them for the Master Tenant or other Sunwest affiliates.*

- Upon closing the Debtors will provide terminations of the Master Leases and existing Sunwest affiliate management agreements. Contract at ¶ 13(b). *The Debtors do not have exclusive authority to do so under the TIC Agreement. <u>See</u> TIC Agreement, Exhibit E, ¶ 1.3.*

- Upon closing the Debtors will provide originals of the resident agreements, contracts, personnel and employment records, resident records, and any other records relating to the management of the facilities. Contract at ¶ 13(c). *The Debtors do not have the power to provide because they do not manage or operate the facilities.*

- The Debtors have full power and right to enter into and perform the Contract. Contract at ¶ 8. *The Debtors have not received authority pursuant to §363(h) and cannot sell assets of the Sunwest affiliates.*

- The Contract does not violate or breach any agreement to which the Debtors or the Properties are bound. Contract at ¶ 8. *The Contract violates the TIC Agreement.*

- The Properties are not subject to any encumbrances or covenants that will be binding on the property following closing. Contract at ¶ 8. *The restrictions and covenants of the TIC Agreement are binding on subsequent purchasers.*

- The Debtor will assign all accounts related to the resident agreements, including security deposits, to the Purchaser. Contract at ¶ 14(e). *The Debtors do not have the power to do since they do so since they do not own these accounts.*

- The Debtors will operate and maintain the nursing home facilities through closing. Contract at ¶ 15(a). *The Debtors do not have the power to covenant because they do not operate the facilities.*

- The Debtors will provide the Purchaser copies of any new resident agreements that the Master Tenant enters into. Contract at ¶ 15(b). *The Debtors do not have the power to covenant this because they are not a party to the agreements.*

- The Debtors will not allow removal of any personal property from the nursing home facilities. Contract at ¶ 15(c). *The Debtors do not have the power to covenant because once again they do not operate the facilities.*

- The Debtors will cooperate and cause all non-debtor affiliates to cooperate with the Purchaser to effectuate a smooth transition of operations and ownership of the facilities. Contract at ¶ 15(d). *The Debtors do not have the ability to compel compliance because they have no direct contractual power over these Sunwest affiliates.*

- The Debtors will cause the Master Tenant to furnish a list and accounting of all patient trust funds. Contract at ¶ 16(c)(i). *The Debtors have no operational authority or control to covenant this.*

A breach of any one of the representations, warranties, or covenants enumerated above entitles the Purchaser to unilaterally terminate the Contract and exposes the estate to liability for breaches that are discovered post-closing. <u>See</u> Contract, Exhibit G at ¶¶ 18(b) & 10(b). Incredibly, the Contract also gives the Purchaser the unilateral right to terminate in the event the Debtor ***does not cause the Master Tenant to perform***.

The latter provision is particularly curious because it is the Sunwest Master Tenants' failure to pay the debt service required by the Master Lease that has created the GE default in the first place. If the Debtors have the ability to compel the Master Tenant to comply with the terms of the Contract, they should have compelled payment of the Secured Financing to GE.

D.     The Contract Imposes Liability on the Estate for the Liabilities of Sunwest Affiliates

The Contract also purports to impose on the Carolina 7 Debtors liability for pre-closing expenses incurred in connection with operating the nursing home facilities when those liabilities are actually obligations of the Master Tenant or Sunwest Management. Throughout the Contract and the Expedited Motion it is clear that the Debtors lost sight of a simple fact, the Carolina 7 Debtors do not operate the Carolina 7 Properties, they simply own a portion of the land on which they sit.

As described above, the Contract obliges the Debtors to, among other things: maintain all health care licenses and approvals; terminate the employees at each facility and be responsible for severance pay, wages and benefits accrued; terminate the

Master Leases and the Sunwest affiliate management agreements; assign the accounts related to the resident agreements including security deposits; operate and maintain the nursing home facilities through closing; and, prevent the removal of any personal property from the nursing home facilities. All of these are **operational** functions that are the obligation and responsibility of the Master Tenant.

A sale cannot be approved as having a "sound business purpose" if it unfairly benefits insiders of the Debtors such as Sunwest or Sunwest's affiliates. In re Channel One Communications, Inc., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (holding that a sale must not unfairly benefit insiders).

E.    There is No Evidence of the Purchasers' Actual Ability to Close on the Contract.

In the Expedited Motion, the Debtors require prospective bidders to comply with numerous burdensome requests before they may even submit a bid. These include: (i) paying a deposit of $2,250,000; (ii) acknowledging that the bidder had an opportunity to conduct due diligence prior to making a bid; (iii) providing current financial statements and, if the bidder is an entity that was formed for the purpose of entering a bid, providing a written guarantee or letter of credit; and (iv) submitting a bid having no terms less favorable than those in the Contract as determined by the **sole** discretion of the Carolina Debtors. See Contract, Exhibit G at ¶ 38(a). Aside from posting the deposit, the Contract and Expedited Motion contain no evidence that the prospective Purchaser has been subjected to similar requirements or has the ability to close the transaction. Instead, the Contract merely recites that the Purchaser "**has sufficient capacity and relationships** with third parties, lenders and/or equity investors to enable it to purchase or finance the purchase of the Property and apply for all

necessary licenses related thereto." <u>See</u> Contract, Exhibit G at ¶ 9(c). In short, the

Contract offers no assurance that the Purchaser has any funding that will enable it to

promptly consummate the proposed transfer. This is unacceptable and in order for the

Court to approve the sale as having a sound business reason, the Debtors must offer some

proof of the proposed Purchaser's wherewithal to close the sale. <u>In re Quality Stores,</u>

<u>Inc.</u>, 272 B.R. 643 (W.D. Mich. 2002) (holding that rejecting offer of a potential bidder

based on the financial uncertainty surrounding the bidder's ability to close on a proposed

sale was proper).

**III.    Proposed Sale Violates the Interest of TIC Owners Property Without
          Complying with 363(f).**

The fractional interests of the TIC Owners in the Carolina 7 Properties

were conveyed through limited warranty deeds (the "Deeds") and state that the

conveyance is subject to the TIC Agreement. Although the TIC Agreement is

unrecorded, the reference to the TIC Agreement in the Deeds makes it binding on

subsequent purchasers of the fee interest. <u>See</u> <u>Frierson, IV v. Watson</u>, 636 S.E.2d 872,

875-876 (S.C. 2006) ("The law imputes to a purchaser of real property notice of the

recitals contained in the written instruments forming the purchaser's chain of title and

charges him with the duty of making such reasonable inquiry"); <u>Terry v. Bros.</u>

<u>Investment Co.</u>, 334 S.E.2d 469, 472 (N.C. 1985) ("[w]hen a grantee accepts a

conveyance of property subject to an outstanding claim or interest evidenced by an

unrecorded instrument executed by his grantor, he takes the property subject to it and is

estopped to deny the unrecorded instrument's validity.")

The Debtors seek to sell the TIC Owners' interest in the Carolina 7

Properties without their consent and without any disclosure to the Court or the Purchaser

Case 3:08-bk-07254    Doc 262   Filed 10/20/08   Entered 10/20/08 12:13:33   Desc Main
                          Document      Page 23 of 36

that in doing so they are violating numerous terms of the TIC Agreements. Absent

consent from the TIC Owners, the sale is in violation of the TIC Agreement which

requires unanimous approval of the tenants in common for any sale. <u>See</u> TIC Agreement,

Exhibit E at ¶ 1.3. The Contract also violates the TIC Owners' right of first offer before

any sale of the Debtors' tenancy in common interest can occur.[8] <u>See</u> Contract, Exhibit G

at ¶ 5.3 and 5.7. In addition, the Carolina 7 Debtors are also seeking to operate the

businesses through the closing dates, thereby effectively terminating the lease with the

Master Tenant, which is forbidden by the TIC Agreement and breaches the prohibition

against day-to-day operational control contained in the TIC Agreement. <u>See</u> TIC

Agreement, Exhibit E at ¶¶ 2.2 & 2.5

   The Carolina 7 Debtors cannot secure approval of the Contract free and

clear of these interests without complying with the provisions of §363(f). Yet, the

Expedited Motion does not even discuss the interests of the TIC Owners. Section 363(f)

requires a showing by the Debtors that:

> (1) applicable non-bankruptcy law permits sale of such property free and
> clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold
> is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to
> accept a money satisfaction of such interest.

11 U.S.C. §363(f).

---

[8] As a condition precedent to the sale of a tenancy in common interest in the Carolina 7 Properties, the
selling owner must give notice to the non-selling owners advising of the desire to complete a sale and of the
non-selling owner's right of first offer, which the Debtors failed to do. Then, within fifteen days of notice
by the selling owner, the selling owner would have to accept or reject the highest offer given by a non-
selling owner. If the selling owner rejects the highest offer given by a non-selling owner, it may sell in an
**all cash** transfer that is **only if** it is greater than the highest offer given by a non-selling owner. <u>See</u> TIC
Agreement, Exhibit E at ¶5.3

BA3DOCS/403736     24
Case 3:08-bk-07254  Doc 262  Filed 10/20/08  Entered 10/20/08 12:13:33  Desc Main
Document   Page 24 of 36

No showing has been made or attempted because in the absence of consent there is no authority for making such a determination. It is also unclear whether GE, which also has an interest in the Carolina 7 Properties, consents to the sale. As with the TIC Owners, the Expedited Motion makes no showing as to how it complies with §363(f) as it pertains to GE. The absence of GE's consent is an independent basis for denying approval of the proposed sale.

## IV.          **Break-Up Fee Is Unreasonable.**

Break-up fees must be in the best interests of the estate, the debtor, and creditors. <u>Calpine Corp. v. O'Brien Envtl. Energy, Inc.</u>, 181 F.3d 527, 534-535 (3d Cir. N.J. 1999) ("The proposed break-up fee must be carefully scrutinized to insure that the Debtor's estate is not unduly burdened and that the relative rights of the parties in interest are protected"). In this instance, the Debtors are requesting a $500,000 break-up fee for the Purchaser. The proposed fee is unreasonable because of the size of the proposed sale, the lack of a binding commitment being made from the prospective Purchaser, the multiple contractual "outs" for the Purchaser, and the numerous defects in the Contract.

As described in more detail above, the Purchaser offers no proof whatsoever regarding its financial ability to close this transaction. <u>See</u> Objection at ¶ II (E). Moreover, the transaction is replete with contractual outs because of the Debtors' inability to perform on the representations, covenants and warranties that are being given. <u>See</u> Objection at ¶ II (C). These provisions render the deposit illusory and the proposed break-up fee nothing more than an effort to chill bidding.

Under the circumstances, if the Court awards a break-up fee it should place a corresponding obligation to close on the proposed Purchaser by making the

deposit being paid non-refundable if the transaction does not close by December 31st for any reason other than the acceptance of a higher offer. In re Chateaugay Corp., 186 B.R. 561 (Bankr. S.D.N.Y. 1995) (defendant liable for a $20 million reverse break-up fee that was added to the asset purchase agreement upon request by creditors in exchange for their support of the prospective buyer, despite the risk of the buyer's inability to obtain the necessary government approvals). In re America West Airlines, 166 B.R. 908 (Bankr. D. Ariz. 1994) (proposed break-up fee is in the best interests of the estate where the property was thoroughly marketed and proposed break-up fee would not unnecessarily chill bidding)

Regardless of the Court's decision regarding the allowance of a break-up fee to the Purchaser, it should not apply to a purchase made by or in conjunction with the TIC Owners because both the TIC Agreement and §363(i) give the TIC Owners a right of first offer.[9] These protections give the TIC Owners an absolute right to purchase the Carolina 7 Debtors' interest for a fair market price without the imposition of a $500,000 penalty.

**V.      Bidding Procedures Order Is Unreasonable.**

The bidding procedures proposed by the Debtors will not provide sufficient notice to potential bidders, places unfair burdens on prospective bidders, vests far too much discretion in the Debtors and improperly excludes the TIC Committee and TIC Owners from the bidding process. The Debtors represent that their real estate broker sent initial materials to approximately 1,100 potentially interested parties and received expressions of interest from 113 of them. Yet, the Debtors seek to send notice of the

---

[9] "Before the consummation of a sale of property to which subsection (g) or (h) of this section applies...a co-owner of such property...may purchase such property at the price at which such sale is to be consummated." 11 U.S.C. §363(i).

Case 3:08-bk-07254    Doc 262    Filed 10/20/08    Entered 10/20/08 12:13:33    Desc Main
                        Document        Page 26 of 36

Expedited Motion and the Auction and Sale Notice only to those parties "identified to the Carolina Debtors by CBRE *as remaining interested* in potentially purchasing the Carolina Debtors' assets." <u>See</u> Expedited Motion at ¶ 3.  There is no advantage to the Debtors estate to arbitrarily limiting the field of potential bidders.  Circumstances change and misunderstandings occur.  It costs very little to send a notice.  There is no reason notice should not be sent to everyone that could conceivably be interested and should certainly be sent to every potentially interested party that was contacted by CBRE.

Expanding the distribution list alone though will not cure the defects inherent in the notice that the Debtors propose to send because as discussed above, the Debtors cannot answer the most basic questions about the proposed sale.  See Objection at II (A).  The price being paid is subject to unknown downward adjustments.  No disclosure is being made with respect to contracts that are to be assumed.  The Contract does not allocate its proceeds among the various Carolina 7 Properties or afford prospective bidders the opportunity to purchase either some but not all of the Carolina 7 Properties or just the Debtors' interest in these Properties.

The burdens the bidding procedures place on potential bidders are prohibitively high and will have a chilling effect on the price paid.  In many cases these stand in stark contrast to those placed on the "Purchaser."  Bidders are required in advance of bidding to provide current financial statements and, if the bidder is an entity that was formed for the purpose of entering a bid, a written guarantee or letter of credit. ***They must also post a deposit of $2,250,000 before even bidding.***  In addition, the procedures afford bidders an artificially short period of time to consider the value and opportunities provided by the Carolina 7 Properties.  In all likelihood closing on the

Contract will not occur, if at all, before the end of December. Yet, the Debtors propose to mail notices twenty days before its artificially chosen auction date. Complying with these requirements on shortened notice will inevitably chill bidding.

There is also entirely too much discretion given to the Debtors in the procedures including granting to Debtors the unilateral right to determine which parties are qualified bidders, whether the bidders' offer contains less favorable terms, and which is the highest bid. <u>See</u> Expedited Motion at ¶¶ 38(a), (b) and (d). If any party should be given discretion to determine items such as the best bid, it should be the TIC Owners who have the only vested interest that is at stake. The Debtors have no equity invested in the Carolina 7 Properties and have nothing to gain from a higher return on the sale. Yet, the TIC Owners and the Committee are specifically excluded from the proceedings altogether! The Committee is given no ability to participate in the auction or the selection of the highest bidder.

In sum, the proposed sale process is fatally flawed and cannot be in the best interest of the estate.

## VI. The Debtors Are Proceeding In Bad Faith.

No action proposed by a debtor-in possession can be approved if it is grounded in bad faith. *See, e.g.*, *In re Tenn-Fla Partners*, 170 B.R. 946, 970 (Bankr. W.D. Tenn. 1994) ("[A]t a minimum, a debtor in possession is required to deal with its creditors, parties in interest and the court in good faith and to avoid self-dealing. Therefore, . . . it may be concluded that the debtor in possession's fiduciary duties rise to the level of those expected of a trustee."), *aff'd in part, rev'd in part*, 229 B.R. 720 (W.D. Tenn. 1999); *Caledonia Leasing & Equip. Co. v. Armstrong, Allen, Braden, Goodman,*

*McBride & Prewitt*, 865 S.W.2d 10, 17 (Tenn. Ct. App. 1993) ("[T]he Bankruptcy Code requires debtors in possession . . . to act in good faith and on behalf of a debtor's creditors . . . ."). In this instance, every action the Debtors have taken evidences a bias toward their affiliates and bad faith toward the TIC Owners. As discussed above, this bad faith is reflected by: (i) the total exclusion of the TIC Owners from the sale "process" and efforts to rush Court approval; (ii) selection of a sales price which coincidentally corresponds to only the Debtors' portion of the GE debt; (iii) diverting rent owing to the TIC Owners from GE to pay for the Debtors' legal fees; (iv) proposing a "Contract" which is missing fundamental business terms and is for all intents and purposes illusory; (v) proposing to assume liability and responsibility for the obligations of Sunwest affiliates ; and (vi) asking the Court to approve an expedited sales process on limited notice when the Debtors lack the ability to consummate a sale within the time frame proposed even if the Expedited Motion is approved.

      For the reasons stated herein, the Committee respectfully requests that the Expedited Motion be denied.

Dated: October 20, 2008

        */s/ Joseph R. Prochaska*
        Joseph R. Prochaska
        Williams & Prochaska, P.C.
        L&C Tower
        401 Church Street, Suite 2600
        Nashville, Tennessee 37219
        Phone: (615) 244-4563
        Fax: (615) 242-0124
        joe@wp-pc.com

        -and-

BA3DOCS/403736        29
Case 3:08-bk-07254    Doc 262    Filed 10/20/08    Entered 10/20/08 12:13:33    Desc Main
Document    Page 29 of 36

Gregory A. Cross
Lisa Bittle Tancredi
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21201
Phone: (410) 244-7400
Fax: (410) 244-7742
gacross@venable.com
lbtancredi@venable.com

Counsel to the Official Committee of
Tenants in Common

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Objection to Debtors' Motion filed on

October 20, 2008, by the Official Committee of Tenants in Common was served upon the parties

on the attached service list as indicated.


*/s/ Gregory A. Cross*
Gregory A. Cross

| VIA ECF OR E-MAIL | | |
|---|---|---|
| Robert A. Guy, Jr., Esquire<br>Eric B. Schultneover, Esquire<br>Waller, Lansden, Dortch &<br>Davis, LLP<br>Nashville City Center<br>511 Union Street, Suite 2700<br>Nashville, TN 37219-1760<br>Bobby.guy@wallerlaw.com<br>Eric.Schultenover@wallerlaw.com | Ira D. Kharasch, Esquire<br>Samuel R. Maizel, Esquire<br>Scotta E. McFarland, Esquire<br>Jonathan J. Kim, Esquire<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, CA 90067-4100<br>ikharasch@pszjlaw.com<br>JStang@pszjla.com<br>SMaizel@pszjla.com<br>JKim@pszjla.com<br>SMcFarland@pszjla.com | Sullivan & Worcester, LLP<br>One Post Office Square<br>Boston, MA 02109<br>Attn: Patrick P. Dinardo<br>pdinardo@sandw.com |
| Sunwest Management, Inc.<br>J. Wallace Gutzler<br>3723 Fairview Industrial Drive, SE<br>Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com | GE Business Financial Services, Inc.<br>Richard T. Arrowsmith, SVP<br>David H. Smith<br>2 Bethesda Metro Center, Suite 600<br>Bethesda, MD 20814<br>Richard.arrowsmith@ge.com<br>davidH.smith@ge.com | Michael Kerry Burke, Esquire<br>Burke & Associates<br>1901 Avenue of the Stars, Suite 300<br>Los Angeles, CA 90067<br>michaelkerryburke@gmail.com |
| Anderson Senior Living, LLC<br>3723 Fairview Industrial Drive, SE,<br>Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com | Charlotte Oakdale Senior Living, LLC<br>3723 Fairview Industrial Drive, SE, Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com | Greensboro Oakdale Senior Living, LLC<br>3723 Fairview Industrial Drive, SE, Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com |
| Mt. Pleasant Oakdale I ALZ, LLC<br>3723 Fairview Industrial Drive, SE, Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com | Mt. Pleasant Oakdale II ALF, LLC<br>3723 Fairview Industrial Drive, SE, Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com | Pinehurst Oakdale Senior Living, LLC<br>3723 Fairview Industrial Drive, SE, Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com |
| Winston-Salem Oakdale Senior Living, LLC<br>3723 Fairview Industrial Drive, SE, Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com | Senior Living Properties II, LLC<br>3723 Fairview Industrial Drive, SE, Suite 270<br>P.O. Box 3006<br>Salem, OR 97302-0006<br>jwgutzler@sunwestmanagement.com | Bone McAllester Norton, PLLC<br>David M. Anthony<br>Sam J. McAllester III<br>511 Union Street, Suite 1600<br>Nashville, TN 37219 |
| Office of the Assistant Union States Trustee for the Middle District of TN<br>701 Broadway, Suite 318<br>Nashville, TN 37203 | Austin L. McMullen<br>Boult, Cummings Conner& Berry PLC<br>1600 Division Street, Suite 700<br>Nashville, TN 37203-0025 | Baker Donelson Bearman<br>Randal S. Mashburn<br>Courtney H. Gilmer<br>211 Commerce Street, Suite 1000<br>Nashville, TN 37201 |
| Trey A. Monsour<br>Haynes and Boone, LLP<br>901 Main Street, Suite 3100<br>Dallas, TX 75202 | Scott J. Goldberg<br>Office of the US Trustee, Region 8<br>601 West Broadway, Suite 512<br>Louisville, KY 40202 | Daniel H. Rosenhouse, Esquire<br>Assistant Attorney General<br>Oregon Dept. of Justice<br>1515 SW Fifth Ave., Suite 410<br>Portland, OR 97201 |
| Philip G. Young<br>22 Public Square, Suite 22<br>Columbia, TN 38401 | Carolyn G. Wade, Esquire<br>Sr. Asst. Attorney General<br>Oregon Department of Justice<br>1162 Court Street NE<br>Salem, OR 97301-4096 | Glenn L. Cox, Esquire<br>P.O. Box 1121<br>Columbia, TN 38402-1121 |

| VIA OVERNIGHT MAIL | | |
|---|---|---|
| Lynxx Group, Inc.<br>2746 Front Street, NE<br>Salem, OR 97303 | Otis Elevator Company<br>P.O. Box 73579<br>Chicago, IL 60673-7579 | Comcast Cable<br>P.O. Box 34227<br>Seattle, WA 98124-1227 |
| Oregon Health Care Association<br>Attn:  J. Greenman<br>11740 SW 68th Parkway, Suite 250<br>Portland, OR 97223 | Home Depot Supply<br>P.O. Box 509058<br>San Diego, CA 92150-9058 | Emerald Fruit & Produce<br>2525 West 7th Place<br>P.O. Box 2684<br>Eugene, OR 97402 |
| Truegreen Landcare, LLC<br>P.O. Box 100186<br>Pasadena, CA 91189-0186 | Mt. Hood Solutions<br>4444 NW Yeon Ave.<br>Portland, OR 97210 | SC Attorney Generals Office<br>The Honorable Henry McMaster<br>P.O. Box 11549<br>Columbia, SC 29211 |
| Progress Landscape, Inc.<br>Account #40032<br>Wilsonville, OR 97070-9288 | Sanipac, Inc.<br>P.O. Box 10928<br>Eugene, OR 97440-2928 | Copesan<br>P.O. Box 1170<br>Milwaukee, WI 53201-1107 |
| Evergreen Portland<br>P.O. Box 110730<br>Tacoma, WA 98411-0730 | TN Attorney Generals Office<br>Bankruptcy Division<br>P.O. Box 20207<br>Nashville, TN 37202-0207 | Re:  Tennessee Secretary of State<br>TN Attorney Generals Office<br>Bankruptcy Division<br>P.O. Box 20207<br>Nashville, TN 37202-0207 |
| Oregon Secretary of Sate Corporation Division<br>P.O. Box 4353<br>Portland, OR 97208-4353 | Oregon Attorney General<br>Attn:  Honorable Hardy Myers<br>Justice Building<br>1162 Court Street, NE<br>Salem, OR 97301-1079 | Re:  TN Dept. of Health<br>TN Attorney General's Office<br>Bankruptcy Division<br>P.O. Box 20207<br>Nashville, TN 37202-0207 |
| Division of Medical Assistant Programs<br>Attn:  Dennette Taber<br>Administrative Office<br>500 Summer Street, NE<br>Salem, OR 97301-1079 | Oce' North America<br>Attn:  Legal Dept.<br>100 Oakview Drive<br>Trumbull, CT 06611 | Ms. Christine A. Kosydar<br>Stoel Rives LLP<br>900 SW Fifth Avenue, Suite 2600<br>Portland, OR 97204 |
| NC Attorney Generals Office<br>9001 Mail Service Center<br>Raleigh, NC 27699-9001 | Ikon Office Solutions<br>Customer #4756703<br>P.O. Box 532530<br>Atlanta, GA 30353-2530 | J&J Printers, Inc.<br>2529 Cruzen Street<br>Nashville, TN 37211 |
| Lucinda's Lawn Care<br>c/o Dennis L. Johnso9n<br>8868 Old Locust Creek Road<br>Bon Aqua, TN 37025 | Nashville Machine Elevator Co., Inc.<br>Customer # wat007<br>P.O. Box 101603<br>Nashville, TN 37224-1603 | Proclean Services of TN<br>6336 Sweetgum Lane<br>Nashville, TN 37221-3919 |
| Purity Dairies, LLC<br>Account #000230<br>P.O. Box 415000<br>Nashville, TN 37241-5000 | Sherwin Williams<br>Account #6764-0271-2<br>101 Heady Drive<br>Nashville, TN 37205-4403 | UPS<br>Shipper #7669AV<br>Lockbox 577<br>Carol Stream, IL 60132-0577 |
| Sysco Food Services<br>One Hermitage Plaza<br>Nashville, TN 37230 | Pacific Power<br>103 NE 6th Avenue<br>Portland, OR 97256-00001 | Sysco Food Services – Portland<br>26250 Parkway Ctr. Drive<br>Wilsonville, OR 97070 |
| Evergreen Portland<br>P.O. Box 55130<br>Portland, OR 97238 | NW Natural Gas<br>P.O. Box 6017<br>Portland, OR 97228-6017 | Comcast Cable<br>P.O. Box 34744<br>Seattle, WA 98124-1744 |
| The Home Depot Supply<br>P.O. Box 509058<br>San Diego, CA 92150-9058 | Medline Industries Inc.<br>Attn:  Anne Kisha<br>One Medline Place<br>Mundelein, IL 60060 | Stutzman Services, Inc.<br>4185 Spicer Drive, SE<br>Albany, OR 97322 |

| | | |
|---|---|---|
| Illustratus<br>10983 Granada Lane<br>Overland Park, KY 66211 | Senior & Disabled Services<br>Division<br>P.O. Box 14021<br>Salem, OR 97309 | OHCA-OCAL<br>11740 SW 68th Parkway, Suite<br>250<br>Portland, OR 97223-9062 |
| Office Depot<br>P.O. Box 70025<br>Los Angeles, CA 90074-0025 | Northwest Mechanical<br>P.O. Box 1593<br>Albany, OR 97321 | Samaritan Professional<br>Development<br>3600 Samaritan Drive<br>Corvallis, OR 97330 |
| US Department of Justice<br>Office of the Attorney General<br>950 Pennsylvania Ave NW<br>Washington, DC 20530 | Office of the United States<br>Attorney<br>James R. Dedrick, US Attorney<br>800 Market Street, Suite 211<br>Knoxville, TN 37902 | Internal Revenue Service<br>Centralized Insolvency<br>Operations<br>P.O. Box 21126<br>Philadelphia, PA 19114 |
| SimplexGrinnell LP<br>50 Technology Drive<br>Westminster, MA 01441 | Anderson's Carolina 7, LLC<br>1001 Wranglers Trail Road<br>Pebble Beach, CA 93953 | B&T Smith's Carolina 7, LLC<br>5563 Blue Jay Street<br>La Verne, CA 91750 |
| Bai's Carolina 7, LLC<br>9855 Bayline Circle<br>Owings Mills, MD 21117 | Brandt's Carolina 7, LLC<br>609 El Salto Drive<br>Capitola, CA 95010 | Buck's Carolina 7, LLC<br>12995 Abert Way<br>Colorado Springs, CO 80908 |
| Cammy's Carolina 7, LLC<br>2707 Ranger Run Circle<br>Arlington, TX 76006 | Carney's Carolina 7, LLC<br>110 Dugout Bend<br>Buda, TX 78610 | Chen's Charolina 7, LLC<br>521 N. Alta Vista Blvd.<br>Los Angeles, CA 90036 |
| Doyle's Carolina 7, LLC<br>50-330 Via Puente<br>La Quinta, CA 92253 | Fenner's Carolina 7, LLC<br>5548 Fremont Street<br>Emeryville, CA 94608 | Funk's Carolina 7, LLC<br>c/o Stein & Lubin, LLP<br>600 Montgomery Street, Ste<br>1400<br>San Francisco, CA 94111 |
| Golay's Carolina 7, LLC<br>3839 SW Marigold Street<br>Portland, OR 97219 | Gunnoe's Carolina 7, LLC<br>5000 Lowell Avenue<br>La Crescenta, CA 91214 | Hawley's Carolina 7, LLC<br>613 Aloha Way<br>Edmonds, WA 98020 |
| Hodson's Carolina 7, LLC<br>388 Terrace Circle<br>Brawley, CA 92227 | J. Fischer's Carolina 7, LLC<br>6695 Landon Road NE<br>Salem, OR 97305 | Lewis' Carolina 7, LLC<br>1707 Idaho Street<br>Port Orford, OR 97465 |
| Liang's Carolina 7, LLC<br>9855 Bayline Circle<br>Owings Mills, MD 21117 | M. Fischer's Carolina 7, LLC<br>6695 Landon Road NE<br>Salem, OR 97305 | Nash's Carolina 7, LLC<br>4667 Rolando Drive<br>Rolling Hills Estates, CA<br>90274 |
| Parker's Carolina 7, LLC<br>305 Lookout View Drive<br>Golden, CO 80401 | Pestana's Carolina 7, LLC<br>27283 Mission Boulevard<br>Hayward, CA 94544 | Rigali's Carolina 7, LLC<br>47 Grove Street<br>San Rafael, CA 94544 |
| S. Smith's Carolina 7, LLC<br>3621 North 26th Street<br>Tacoma, WA 98407 | Silversage's Carolina 7, LLC<br>2707 Ranger Run Circle<br>Arlington, TX 76006 | Slakey's Carolina 7, LLC<br>450 Sansome Street, 14th Floor<br>P.O. Box 26903<br>San Francisco, CA 94111 |
| Smith's Carolina 7, LLC<br>6749 Westridge Court North<br>Keizer, OR 97303 | Sturza's Carolina 7, LLC<br>1121 Harrison Avenue<br>PMB 307<br>Centralia, WA 98531 | Tichinin's Carolina 7, LLC<br>4965 Matney Road<br>Monmouth, OR 97361 |
| Waldau's Carolina 7, LLC<br>24703 Tiburon Street<br>Valencia, CA 91355 | Anderson County Treasurer<br>P.O. Box 8002<br>Anderson, SC 29622-8002 | Mecklenburg County Tax<br>Collector<br>P.O. Box 32247<br>Charlotte, NC 28232-2247 |
| North Carolina Dept. of<br>Revenue<br>P.O. Box 25000<br>Raleigh, NC 27640-0640 | South Carolina Dept. of<br>Revenue<br>P.O. Box 125<br>Columbia, SC 29214 | Guildford County Tax<br>Department<br>P.O. Box 71072<br>Charlotte, NC 28272-1072 |

| | | |
|---|---|---|
| Charleston County Treasurer<br>P.O. Box 878<br>Charleston, SC 29402-0878 | Moore County Tax Department<br>P.O. Box 580377<br>Charlotte, NC 28258-0377 | Forsyth County Tax Collector<br>P.O. Box 70844<br>Charlotte, NC 28272-0844 |
| Guildford County Tax<br>Department<br>The Independence Center<br>400 W. Market Street<br>P.O. Box 3138<br>Greensboro, NC 27401 | Charleston County Treasurer<br>101 Meeting Street<br>2 Courthouse Square<br>Charleston, SC 29402 | Moore County Tax Department<br>P.O. Box 457<br>Carthage, NC 28327 |
| Forsyth County Tax Collector<br>P.O. Box 82<br>Winston-Salem, NC 27102 | Moore County Tax Dept.<br>P.O. Box 428<br>Carthage, NC 28327-0428 | SC Dept. of Revenue<br>Partnership Return<br>Columbia, SC 29214-0008 |
| Mecklenburg County Tax<br>Collector<br>P.O. Box 71063<br>Charlotte, NC 28272-1063 | North Carolina Attorney<br>General<br>Attn: Honorable Roy Cooper<br>Department of Justice<br>P.O. Box 629<br>Raleigh, NC 27602-0629 | Slakeys Carolina 7 LLC<br>Philip Slakey<br>14 Isleworth Drive<br>Henderson, NV 89502 |
| Sturzas Carolina 7 LLC<br>Dixie Sturza<br>c/o Beverly Saari<br>76-894 Ascalon Avenue<br>Palm Desert, CA 92211 | Asset Real Estate Investment,<br>LLC<br>443 Redcliff Dr., Suite 100<br>Redding, CA 96002 | Bar-Lyn Enterprises, Inc.<br>4611-A Hillsborough Road<br>Durham, NC 27705 |
| Clayton King Co.<br>512 Massey Road<br>Mount Siry, NC 27030 | Electronic Syst & Design,<br>Inc.<br>108 Philema Road<br>Albany, GA 31701 | Clayton King Co.<br>4611-A Hillsborough Road<br>Durham, NC 27705 |
| Superior Carpet<br>12241 Rosewood St.<br>Laurinburg, NC 28352 | Otis Elevator Company<br>PO Box 905454<br>Charlotte, NC 28290-5454 | Progressive Plumbing & Piping<br>PO Box 11218<br>Durham, NC 27703-0218 |
| Simplex Grinnell<br>Dept. Ch 10320<br>Palatine, IL 60055-0320 | Carolina Air Solutions, Inc.<br>2900 Westinghouse Blvd.<br>Suite 109<br>Charlotte, NC 28273-4555 | Green Horizons & Beyond, Inc.<br>8601 Monroe Road<br>PO Box 17108<br>Charlotte, NC 28270 |
| GCS Service, Inc.<br>PO Box 64373<br>Saint Paul, NM 55164-0373 | Piedmont Sound & Signal<br>103-F Creek Ridge Road<br>Greensboro, NC 27406 | Rapid Air<br>P.O. Box 4784<br>Corpus Christi, TX 78469 |
| Diebold Fire Services Inc.<br>P.O. Box 644146<br>Pittsburgh, PA 15264-4146 | AT&T Mobility<br>Account #834592648<br>P.O. Box 6463<br>Carol Stream, IL 60197-6463 | Corporate Express<br>1 Environment Way<br>Brookfield, CO 80021 |
| Creative Alarms, Inc.<br>Customer #Capri 08<br>2702 Nolensville Road<br>Nashville, TN 37211 | Community Fire Safety Systems<br>1826 Thompsons Station Rd W<br>Thompsons Station, TN 37179 | Davis Wright Tremaine LLP<br>Julie Springer<br>1300 SW Fifth Avenue<br>Suite 2300<br>Portland, OR 97201 |
| Ecolab Pest Elimination<br>Division<br>#0019941944<br>PO Box 100512<br>Pasadena, CA 91189-0512 | EMG<br>11011 McCormick Road<br>Hunt Valley, MD 21031 | Farmer Brothers Co.<br>Account #020001D<br>File 55172<br>3828 S. Main Street<br>Los Angeles, CA 90037 |
| First American Prof Land<br>Services<br>Marisa Jackson<br>P.O. Box 5171<br>Norman, OK 73070 | Fowlers Profile Links, Inc.<br>Account #562<br>PO Box 291043<br>Nashville, TN 37229-1043 | GE Business Financial<br>Services, Inc.<br>Attn: Richard T. Arrowsmith,<br>SVP<br>2 Bethesda Metro Center, Ste<br>600<br>Bethesda, MD 20814 |
| Winston & Strawn | Hinshaw & Culbertson LLP | HD Supply Facilities Maint |

| | | |
|---|---|---|
| Randy Rogers<br>101 California Street<br>San Francisco, CA 94111-5802 | David Mylrea<br>2000 Accenture Tower<br>333 South Seventh Street<br>Minneapolis, MN 55402 | #6091458<br>PO Box 509058<br>San Diego, CA 92150-9058 |
| Patrick Bickler, Architect LLC<br>1313 Mill Street, SE<br>Salem, OR 97301 | Springfield Utility Board<br>P.O. Box 300<br>Springfield, OR 97477-0077 | Meredith A. Cote, Director<br>Office of the Long Term Care<br>Ombudsman<br>3855 Wolverine NE, Suite 6<br>Salem, OR 97305-1251 |
| James C. Waggoner<br>Davis Wright Tremaine LLP<br>1300 SW Fifth Avenue, Suite 2300<br>Portland, OR 97201 | Brian K. Matise, Esquire<br>David P. Hersh, Esquire<br>Rosemary Orsini, Esquire<br>Burg Simpson<br>40 Inverness Drive East<br>Denver, CO 80112 | Tennessee Department of Revenue<br>c/o TN Attorney General's Office<br>P.O. Box 20207<br>Nashville, TN 37202-0207 |

Case 3:08-bk-07254   Doc 262   Filed 10/20/08   Entered 10/20/08 12:13:33   Desc Main
Document   Page 36 of 36