IN THE UNITED STATES BANKRUPTCY COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NASHVILLE SENIOR LIVING, LLC, <u>et al.</u>,[1] | ) | Case No. 08-07254 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Paine |

**REPLY IN SUPPORT OF CAROLINA DEBTORS' EXPEDITED MOTION FOR AN ORDER PURSUANT TO SECTIONS 105, 362, AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 9014 (A) APPROVING THE ENTRY BY CAROLINA DEBTORS INTO ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF PROPERTY OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE; (C) AUTHORIZING THE DISBURSEMENT OF PROCEEDS OF SALE; (D) APPROVING BID PROCEDURES AND OVERBID PROTECTIONS; (E) SCHEDULING AUCTION AND SALE HEARING; (E) APPROVING THE FORM AND MANNER OF NOTICES; AND (F) GRANTING RELATED RELIEF**

Anderson Senior Living Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC, and Winston-Salem Oakdale Property, LLC, debtors and debtors in possession and proposed sellers of assets herein (collectively, the "Carolina Debtors") hereby file this Reply (the "Reply") in support of its Motion[2] and in response to the TIC Committee

---

[1] The Debtors in these cases are Nashville Senior Living, LLC, Anderson Senior Living Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC, Winston-Salem Oakdale Property, LLC, Briarwood Retirement and Assisted Living Community, LLC, and Century Fields Retirement and Assisted Living Community, LLC.

[2] Carolina Debtors' Expedited Motion for an Order Pursuant to Sections 105, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014 (A) Approving the Entry by Carolina Debtors Into Asset Purchase Agreement and Authorizing the Sale of Property Outside the Ordinary Course of Business; (B) Authorizing the Sale of Property Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to Section 363(b), (f), and

Objection[3] and the Doyle's Objection.[4] Although the Objections raise a number of different objections, most of the objections relate to issues not currently before the Court. The only matter before the Court presently is the Carolina Debtors' expedited request to approve the sale process. Specifically, the request to (i) approving bid procedures and overbid protections; (ii) scheduling an auction and a hearing to consider the sale; (iii) approving the form and manner of notices; and (iv) granting related relief. Approval of the Sale and other issues addressed in the Objections are not yet before the Court.

**<u>Objections to the Sale Agreement Should Be Considered at the Sale Approval Hearing.</u>**

Because approval of the Sale is not before the court many of the objections need not, and should not be considered at this time. Those objections, include but are not limited to: (1) whether the sale is in the best interest of the estate,[5] (2) whether the proposed purchase agreement is complete and discloses all necessary terms of the contract,[6] (3) whether the Debtor's have the right to transfer the assets,[7] (4) whether the purchase agreement exposes the estate to liability outside the Debtor's

---

(m) of the Bankruptcy Code; (C) Authorizing the Disbursement of Proceeds of Sale; (D) Approving Bid Procedures and Overbid Protections; (E) Scheduling Auction and Sale Hearing; (E) Approving the Form and Manner of Notices; and (F) Granting Related Relief (the "Motion"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[3] Objection to Debtors' Motion for an Order (A) Approving the Entry by Carolina Debtors Into Asset Purchase Agreement and Authorizing the Sale of Property Outside the Ordinary Course of Business; (B) Authorizing the Sale of Property Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to Section 363(b), (f), and (m) of the Bankruptcy Code; (C) Authorizing the Disbursement of Proceeds of Sale; (D) Approving Bid Procedures and Overbid Protections; (E) Scheduling Auction and Sale Hearing; (E) [sic] Approving the Form and Manner of Notices; and (F) Granting Related Relief (the "TIC Committee Objection").

[4] Objection to Carolina Debtors' Expedited Motion for an Order Pursuant to Sections 105, 362, and 363 of the bankruptcy Code for an Order Approving the Entry by Carolina Debtors into Asset Purchase Agreement and Authorizing Sale ("Doyle Objection" and collectively with the TIC Committee Objection, the "Objection").

[5] TIC Committee Objection pp. 15-16; Doyle's Objection ¶¶ 2, 4.

[6] TIC Committee Objection pp. 16-17.

[7] TIC Committee Objection pp. 17-18.

2

control,[8] (5) whether the purchaser has the ability to close,[9] (6) whether the proposed Purchase Agreement violates any of the TIC Owners' rights,[10] (7) the tax effect of the sale on the TIC Owners,[11] (8) which contracts are to be assumed,[12] and (9) whether the sale price is sufficient.[13] Each of those objections can and should be considered at the Sale Approval Hearing. Additionally, a number of these issues are already before the court and set to be heard on November 12, 2008.[14]

The Carolina Debtors disagree with many of the factual assertions presented by the objecting parties in support of their objection. However, as this hearing is solely to approve the sale process, the Carolina Debtors will respond to those factual assertions and objections at the appropriate time.

### The Sale Process is Reasonable and Should be Approved.

The objecting parties have raised a number of objections to the approval of the sale process itself. They argue that: (1) no emergency justifies the expedited process, (2) insufficient marketing has been performed, (3) the break-up fee is unreasonable, (4) the procedures order is unreasonable.

---

[8] TIC Committee Objection pp. 18-22.

[9] TIC Committee Objection pp. 22-23.

[10] TIC Committee Objection pp. 23-25.

[11] TIC Committee Objection pp. 9-10.

[12] TIC Committee Objection pp. 27.

[13] Doyle's Objection pp. 4.

[14] *See* Debtors' Motion to Dissolve Tenant in Common Committee, and/or for an Order Determining that Appointment of Official Committee Exceeded the Authority of the United States Trustee [Docket No. 241 in Case No. 08-07254]; Motion of Anderson Senior Living Property, LLC for Summary Judgment [Docket No. 8 in AP No. 08-329]; Motion of Charlotte Oakdale Property, LLC for Summary Judgment [Docket No. 7 in AP No. 08-330]; Motion of Greensboro Oakdale Property, LLC for Summary Judgment [Docket No. 7 in AP No. 08-331]; Motion of Mt. Pleasant Oakdale I Property, LLC for Summary Judgment [Docket No. 7 in AP No. 08-332]; Motion of Mt. Pleasant Oakdale II Property, LLC for Summary Judgment [Docket No. 7 in AP No. 08-333]; Motion of Pinehurst Oakdale Property, LLC for Summary Judgment [Docket No. 7 in AP No. 08-334]; Motion of Winston-Salem Oakdale Property, LLC for Summary Judgment [Docket No. 7 in AP no. 08-335].

However, each aspect of the sale process is reasonable and the process and notice should be approved.

A. **Need for Expedited Relief as to Sale Procedures**

The objecting parties object to the expedited sale process contending that there is no emergency. At the hearing, the Carolina Debtors will present evidence that:

- expedited approval of the sale procedures is necessary and in the best interest of the estates to maximize the value in a sale of the Carolina Properties.

- The Carolina Properties have been subjected to significant marketing, both pre- and post-petition, for approximately three months, and the current purchaser provides the best value for the Debtors in the sale of the Carolina Properties.

- The current credit markets make a sale very difficult, and in the last several weeks the Debtors have seen at least one other potential stalking horse back out of purchase discussions.

- The market for senior living facilities is the worst it has been in over 22 years. The conditions and thus values will get worse.

- A transaction will take a number of weeks to close after it is approved because, due to state licensing requirements, any purchaser of the facilities must apply for and obtain state licenses to operate the senior living facilities.

- Five Star insisted that it be able to close the transaction by year end and therefore required that the court approve the sale by November 20, 2008 in order to allow sufficient time for it to obtain all necessary licenses.

Thus, a protracted sale process would delay the closing, and the Carolina Debtors are concerned they will lose the existing sale if they cannot close it quickly on the current buyer's deadline. In addition, the Carolina Debtors do not have liquidity to pay debt service pending closing of a transaction so delay could negatively impact the amount of the secured debt and will certainly lead to the possibility of immediate action by the Carolina Debtors' secured creditor to move for relief from the automatic stay or to dismiss the cases.

The objecting parties contend that failure to proceed with the current sale would result in the estate's being no worse off than they would be with an expedited sale because in either case there are no net proceeds to the estate.[15] While it is true that there may be little difference to the TIC investors, it is incorrect that the net effect will be the same. Carolina Debtors will present evidence at the hearing that the price received for senior housing property sold in a foreclosure proceeding is almost always less than that obtained in a negotiated sale. Thus, if the sale falls through because of delay, the secured lender will retain larger residual claim against the estates for the deficiency, thereby reducing the value of the estates from that which could be obtained under the sale.

Thus, there is sufficient basis for the expedited nature of the sale's process.

B.     **Sufficient Marketing has been performed.**

The objecting parties also argue that it is not clear that sufficient marketing has been performed to determine the best price for the property. However, nothing could be further from the truth.

As more fully explained in the Motion and Declaration of Michael Deines,[16] in July 2008, the Carolina Debtors engaged the services of CB Richard Ellis ("CBRE") as broker to assist the Carolina Debtors in efforts to sell the Carolina Properties. CBRE is a nationally known real estate brokerage firm and has a business unit that specializes in the disposition of long-term care facilities for the elderly. On or about July 28, 2008, CBRE circulated summary information about the Carolina Properties and confidentiality agreements to approximately 1,100 potentially interested parties. CBRE subsequently contacted by telephone approximately 600 of the recipients. Of the

---

[15] Doyle's Objection ¶¶ 7-8.

[16] Motion at ¶¶27-28; Declaration of Michael Deines ¶ 22.

5

recipients, 112 signed confidentiality agreements and were sent marketing materials. CBRE received 13 bids. CBRE narrowed down the 13 bids to the top 5 and undertook negotiations with the top 5 in order to maximize the amount of the bids. After negotiating with the top 5 bidders, CBRE determined that the bid of Five Star Quality Care, Inc. was the highest and best bid and recommended to the Carolina Debtors that they pursue a sale contract with this bidder.

In addition, prior to July 2008, the Debtors and their affiliates have been in a lengthy process of courting bidders for their assets. In February 2008, the Debtors and their affiliates hired CBRE to market all of the facilities owned by the Debtors and their affiliates. In addition, the Debtors' own staff has made substantial efforts in contacting and communicating with potential buyer parties for the assets, without success for the Carolina Properties.

Certainly submitting inquiries to 1,100 potential interested parties and contacting 600 via telephone is adequate marketing of the assets. The proposed notice of and sale process will allow any of those parties, or any other parties that were missed to come forward if they have an interest. If either objecting party believes there is an interested party that was missed, they can certainly contact that party and let them know of the sale.

The TIC Committee further argues the estate should be required to renotice all 1,100 previously noticed parties of the impending sale. The Carolina Debtors do not believe this is necessary. The Carolina Debtors have proposed to notice those parties who expressed interest in the sale but there is little point in renoticing those who expressed no interest in purchasing the assets.

C. **The Break-up Fee is Reasonable.**

The TIC Committee contends that the Break-up Fee is unreasonable because of the size of the proposed sale and that it is "nothing more than an effort to chill bidding." The Break-up Fee is reasonable and will not chill bidding. The Break-Up Fee of $500,000 (approximately 1% of the

6

Case 3:08-bk-07254  Doc 264  Filed 10/21/08  Entered 10/21/08 07:47:36  Desc Main
Document      Page 6 of 10

purchase price) proposed by the Purchaser is well within the spectrum of termination fees approved by bankruptcy courts in chapter 11 cases, particularly when compared to sales of a similar magnitude.[17] As set forth more fully in the Motion, the Break-up Fee is designed to compensate the Purchaser for the time and expense incurred by the Purchaser in connection with its due diligence investigation of the Carolina Properties and its negotiation of the Agreement, and its willingness to serve as a "stalking horse" for other potential bidders in the event another entity ultimately purchases the property. The Break-Up Fee therefore should be approved as reasonable and necessary to maximize the value of the Property.

D. **The Bidding Procedures Order is Reasonable.**

The objectors also objects to the bidding procedures because (1) notice should be given to all 1,100 potential bidders not just those who remain interested, (2) bidders must deposit $2,250,000 before bidding and if they are a new entity post a written guarantee or letter of credit, (3) the bidding

---

[17] See, e.g., In re Ameriserve, Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (Court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); In re Montgomery Ward Holding Corp., et a1., Case No. 97-1409 (PJW) (Bankr. D. Del., June 15, 1998) (Court approved termination fee of 2.7%, or $3,000,000, in connection with $110,000,000 sale of real estate assets); In re Medlab, Inc., Case No, 97-1893 (PJW) (Bankr. D. Del., April 28, 1998) (Court approved termination fee of 3.12%, or $250,000, in connection with $8,000,000 sale transaction); In re Anchor Container Corp. et, al., Case Nos. 96-1434 and 96-1516 (PJW) (Bankr. D. Del. Dec. 20, 1996) (Court approved termination fee of 2.43%, or $8,000,000, in connection with $327,900,000 sale of substantially all of Debtors' assets); In re FoxMeyer Corp. et al., Case No. 96-1329 (HSB) through 96-1334 (HSB) (Bankr. D. Del., Oct. 9, 1996) (Court approved termination fee of 7.47%, or $6,500,000, in connection with $87,000,000 sale of substantially all of Debtors' assets); In re Edison Bros. Stores. Inc. et al., Case No. 95-1354 (PJW) (Bankr. D. Del., Dec. 29, 1995) (Court approved termination fee of 3.5%, or $600,000, in connection with $17,000,000 sale of Debtors' entertainment division); In re Indust. Gen. Corp., Case No. 95-895 (PJW) (Bankr. D. Del.) (Court approved termination fee of 3.57%, or $500,000, in connection with $14,000,000 sale transaction); In re Buddy L. Inc., Case No. 95-23S (HSB) (Bankr. D. Del.) (Court approved termination fee of 1.6%, or $800,000, in connection with $50,000,000 sale of Debtors' toy division); In re Continental Airlines, Inc., Case No. 90-932 (HSB) (Bankr. D. Del.) (Court approved termination fee of 2.4%, or $1,500,000, in connection with $61,000,000 sale transaction); see also Integrated Res., 147 B.R. at 648.

7

Case 3:08-bk-07254    Doc 264    Filed 10/21/08    Entered 10/21/08 07:47:36    Desc Main
Document      Page 7 of 10

period is too short for bidders to conduct a reasonable investigation, and (4) grants the debtors discretion to determine what bid is the best.[18]

First, as discussed above, the Carolina Debtors do not believe there is anything to be gained from renoticing the potential bidders who were included in those 1,100 previously noticed but showed no interest in purchasing the assets.

Second, the requirement that bidders must deposit $2,250,000 before bidding and if they are a new entity post a written guarantee or letter of credit, is reasonable. A deposit of approximately 5% of the sale price is certainly reasonable. It is the same amount as the deposit by the proposed stalking horse bidder. Requiring a new entity to post a written guaranty or letter of credit is also reasonable. Both requirements insure that the bidder is submitting a bid in good faith and increases the likelihood that the bidder will be able to close on the transaction. Furthermore, such a deposit protects the Debtors in the event the bidder is unable to close. The objectors have not shown any hardship that posting a 5% deposit would impose. Nor have they shown that such a small deposit is an abuse of the Debtors' business judgment. Carolina Debtors will present evidence at the hearing that a 5% deposit is typical in this type of a transaction.

Third, although the bidding period is short, as discussed above, it is necessary to expedite the sale. Furthermore, Carolina Debtors believes that all potential bidders were notified of the potential sale on or about July 28, 2008. Thus, the period of time within which they could and have been conducting due diligence is significantly longer than it first appears. If another unknown bidder comes forward, Carolina Debtors will work as quickly as feasible for to provide that bidder with all necessary information, subject to adequate confidentiality agreements. This issue could certainly be revisited at the Sale approval hearing if the objecting parties believe that a bidder came forward but

---

[18] TIC Committee Objection pp. 27-28; Doyle's Objection ¶¶ 6 & 8.

8

Case 3:08-bk-07254    Doc 264    Filed 10/21/08    Entered 10/21/08 07:47:36    Desc Main
Document      Page 8 of 10

was not given sufficient time to conduct due diligence because Carolina Debtors was slow in responding to their requests. However, there is no reason to believe that there is any potential bidder who was not informed months ago of the possible sale.

Fourth, the objectors contend that the Carolina Debtors retain too much discretion in determining the best bid. It is typical that the Debtor is given the discretion to choose the best bid. If there is a disagreement concerning what is in fact the best bid, that issue can be presented to and determined by the Court at the Sale Approval Hearing where the Court can examine both bids, hear the Debtors' reasons for choosing one over another and determine if those reasons are within the Debtors exercise of its business judgment.

WHEREFORE, the Carolina Debtors respectfully request that the Court:

(a) approve the Break-Up Fee, overbid protections and other Bid Procedures contained in the proposed Procedures Order attached as <u>Exhibit B</u> to the Motion;

(b) approve the forms and manner of notice of the sale and Auction as set forth in the proposed Procedures Order;

(c) set the dates for the Auction and Sale Hearing as set forth in the Procedures Order; and

(d) grant such other and further relief as the Court deems fair and necessary.

Dated: October 21, 2008                    /s/ Robert A. Guy, Jr.
                                           Robert A Guy, Jr. (TN BPR #16715)
                                           Eric B. Schultenover (TN BPR 020981)
                                           WALLER LANSDEN DORTCH & DAVIS, LLP
                                           Nashville City Center
                                           511 Union Street, Suite 2700
                                           Nashville, Tennessee 37219
                                           Telephone: (615) 244-6380
                                           Facsimile: (615) 244-6804
                                           Bobby.Guy@wallerlaw.com
                                           Eric.SChultenover@wallerlaw.com

                                           And

                                           Ira D. Kharasch (CA Bar No. 109084)
                                           (*Pro Hac Vice*)
                                           James I. Stang (CA Bar No. 094435)
                                           (*Pro Hac Vice*)
                                           Samuel R. Maizel (CA Bar No. 189301)
                                           (*Pro Hac Vice*)
                                           Scotta E. McFarland (CA Bar No. 165391)
                                           (*Pro Hac Vice*)
                                           Jonathan J. Kim (CA Bar No. 180761)
                                           (*Pro Hac Vice*)
                                           PACHULSKI STANG ZIEHL & JONES LLP
                                           10100 Santa Monica Blvd., 11th Floor
                                           Los Angeles, California 90067-4100
                                           Telephone: 310/277-6910
                                           Facsimile: 310/201-0760
                                           IKharasch@pszjlaw.com
                                           JStang@pszjlaw.com
                                           SMaizel@pszjlaw.com
                                           JKim@pszjlaw.com
                                           SMcFarland@pszjlaw.com

                                           Counsel for Debtors and Debtors in Possession