





Dated: 10/22/08

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

**In Re:**

| | | |
|---|---|---|
| NASHVILLE SENIOR LIVING, ET AL.,[1] | ) | CASE NO. 08-07254 |
| | ) | CHAPTER 11 |
| | ) | (JOINTLY ADMINISTERED) |
| Debtors | ) | JUDGE GEORGE C. PAINE, II |

## MEMORANDUM

This matter is before the court upon the motion dated October 10, 2008 (the "Sale Motion") of Anderson Senior Living Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Pinehurst Oakdale Property, LLC, and Winston-Salem Oakdale Property, LLC (collectively, the "Carolina Debtors"), for an expedited order (the "Procedures Order") (A) scheduling an auction (the "Auction") of certain property of the Carolina Debtors (the "Estate Property" and, together with the interests of the Co-Tenants the "Property") and (B) entry of an order (the "Sale Order") (i) authorizing the sale (the "Sale") of the Property free and clear of all liens, claims and encumbrances, and (ii) the disbursement of the proceeds of sale, and (B) approving (i) the form and manner of respective notices of the Auction and the Sale,

[1] The Debtors in these cases are Nashville Senior Living, LLC, Anderson Senior Living Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC, Winston-Salem Oakdale Property, LLC, Briarwood Retirement and Assisted Living Community, LLC, and Century Fields Retirement and Assisted Living Community, LLC.

(ii) the proposed bidding and sale procedures (the "Bidding Procedures") in connection with the Sale Motion, and (iii) a break-up fee of $500,000.00 (approximately 1% of the Purchase Price) (the "Break-Up Fee"). For the reasons hereinafter cited, the court finds that the debtors' motion is well-taken and instructs debtors' counsel to submit an Order not inconsistent with this Memorandum within three (3) days of entry of the Memorandum.

The debtors seek approval to start the process of selling certain property owned as tenants in common with at least 30 other tenant in common entities.[2] Specifically, the debtors propose to set procedures for (a) qualification of bidders, (b) defining the requirements for competing bids, including *inter alia* a $2,225,000 deposit of immediately available funds, and an initial overbid of at least $750,000.00, and subsequent overbids of at least $250,000; and (c) an auction, with organized auction procedures. The TIC opposes any sale of the jointly held proeprty.[3] They argue, *inter alia*, that there is no need to expedite the sale procedures; that they have been shut out of the sale process; that the debtors are selling assets they do not possess; that the debtors are conveying representations on behalf of third parties; that there is no showing of ability to close; that the break-up fee is unreasonable; that they will suffer a total loss of their investment and harsh tax consequences if the Property is sold; that the sale price is unreasonable in that no money is being brought to the estate; and that the debtors are acting in bad faith. Of those objections, only the TIC's opposition to: (1) the emergency nature of the motion; (2) the break-up fee; and (3) the bidding procedures are

[2] The United States Trustee appointed an official committee of the Tenants in Common ("TIC") to represent the interests of the 30 co-tenants.

[3] Pending adversary proceeding dealing with the 11 U.S.C. § 363(h) disagreement are set for hearing on November 11, 2008.

relevant to the procedures order currently sought by the debtors. All remaining objections are preserved for a future hearing held to approve any eventual sale.

"The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate. To accomplish that goal, bankruptcy courts are necessarily given discretion and latitude in conducting the sale." **In re Edwards** 228 B.R. 552, 561 (Bankr. E.D.Pa., 1998). The court finds that the testimony offered by the debtors' expert, CB Richard Ellis executive, David Rothschild, sufficiently demonstrated to the court the exigent circumstances justifying expedited approval of the procedural protections sought by the debtors, and the reasonableness of the terms sought therein.

David Rothschild is an executive vice president at CB Richard Ellis in charge of the Senior Housing Group. He has twenty-two years of experience in his field, and recited a litany of clients by whom he was engaged to broker real estate transactions. As to the expedited nature of the debtors' motion, Rothschild testified that in his expert opinion, the stalking horse bidder in this case, (whom he has brokered the sale of assets to previously), was likely to be lost if the sale procedures were not put forth on this faster tract. In fact, he explained that a previous stalking horse with a bid $6,000,000.00 higher than the current offer was lost due to the unstable credit markets. In his opinion, the sale procedures cannot wait. The court found his testimony credible and convincing and agrees that expedited approval of the bidding procedures and setting of an auction date are warranted. Accordingly, any objection by the TIC to the expedited nature of the relief sought is overruled. The court grants the debtor's motion for entry of an expedited order as sought in the debtors' motion.

The TIC also opposes the break-up fee. Except in extremely large transactions, break-up fees ranging from one to two percent of the purchase price have been authorized by some courts. **See In re Hupp Industries, Inc.**, 140 B.R. 191, 194 (Bankr. N.D. Ohio, 1992) (listing cases).

Although a totality of the circumstances dictate the reasonableness of a break-up fee under the unique facts of each case, some of the factors considered by other courts include:

> 1) Whether the fee requested correlates with a maximization of value to the debtor's estate;
>
> 2) Whether the underlying negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer;
>
> 3) Whether the principal secured creditors and the official creditors committee are supportive of the concession;
>
> 4) Whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;
>
> 5) Whether the dollar amount of the break-up fee is so substantial that it provides a "chilling effect" on other potential bidders;
>
> 6) The existence of available safeguards beneficial to the debtor's estate;
>
> 7) Whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

**Id.**. In this case, the fee is approximately 1% of the purchase price; was a bargained-for, arms length term in the contract according to Mr. Rothschild's testimony; is supported by the principal secured creditor; will likely maximize the value of the assets by providing a stalking horse for the auction; and without it, may result in the loss of the potential purchaser as testified to by Mr. Rothschild. The court found no substance to the TIC's objections that the fee is unreasonable, or

that it will provide a chilling effect to the sale. Accordingly, the court overrules the TIC's objection to the break-up fee, and grants the debtor's motion for allowance of the breakup fee as proposed in the motion.

Finally, the TIC objects to the bidding procedures as being unreasonable. More precisely, the TIC complains that: (1) the notice to potential bidders is insufficient; (2) the burdens of the bidding procedures, such as the $2,250,000 deposit requirement is unreasonable; (3) that the overbid amount is too high; (4) that time frame is too short; and (5) too much discretion is allowed to the debtors in the bidding procedure. The court disagrees with the TIC.

The court has discretion when approving bidding procedures for the sale of assets. The court finds that none of the terms proposed by the debtors in this case are unreasonable. Based on Mr. Rothschild's testimony, and the court's approval of hundreds of bidding procedure orders in the past, the procedures proposed by the debtors in this case unquestionably pass the "smell test." There appears to be no overreaching, and only the debtors' best efforts to achieve the highest and best value for the estate by the procedures proposed. Mr. Rothschild explained that the credit markets are in terrible shape, but based on his experience, this purchaser has funds at the ready to close this transaction and is willing and able to do so. Having lost a bid $6,000,000.00 higher than the current proposal, the debtors are attempting to safeguard the "bird-in-hand" while also providing opportunities for potentially higher offers.

The court therefore overrules all of the TIC's objections to the sale procedures proposed by the debtors' sale motion. All of the TIC's objections to the substance of the actual sale can be argued at the eventual sale hearing, should that occur.

The debtors are instructed to prepare an order, not inconsistent with this ruling, granting the Carolina Debtors' expedited motion for an order pursuant to Sections 105, 362, and 363 of the Bankruptcy code and Bankruptcy Rules 2002, 6004 and 9014 (A) approving the entry by Carolina Debtors into asset purchase agreement and authorizing the sale of Property outside the ordinary course of business; (B) authorizing the sale of property free and clear of liens, claims, encumbrances and interests pursuant to sections 363(b), (f) and (m) of the Bankruptcy code; (C) authorizing the disbursement of proceeds of sale; (D) approving bid procedures and overbid protections; (E) scheduling auction and sale hearing; (F) approving the form and manner of notices; and (G) granting related relief within three (3) days of entry of this Memorandum.

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**



This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.