
George C. Paine, II
US Bankruptcy Judge
Dated: 01/21/09



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

**In Re:**

NASHVILLE SENIOR LIVING, ET AL.,[1]

Debtors

CASE NO. 08-07254
CHAPTER 11
(JOINTLY ADMINISTERED)
JUDGE GEORGE C. PAINE, II

## MEMORANDUM

This matter is before the court on the objection of the Official Committee of Unsecured Creditors, and a portion of the United States Trustee's objection to the interim fee applications of Steptoe & Johnson, special counsel to the debtor, and Pachulski Stang Ziel & Jones, LLP, counsel to the debtor. For the reasons cited herein, the court overrules the United States Trustee and Committee's objections and grants the interim fees as requested by both the Steptoe firm and the Pachulski firm.

**Steptoe & Johnson's Application**

Steptoe & Johnson filed its First Interim Application for Allowance of Compensation

---

[1] The Debtors in these cases are Nashville Senior Living, LLC, Anderson Senior Living Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC, Winston-Salem Oakdale Property, LLC, Briarwood Retirement and Assisted Living Community, LLC, and Century Fields Retirement and Assisted Living Community, LLC.

And Reimbursement of Expenses Through November 30, 2008 in accordance with the provisions of The Order Granting Expedited motion Pursuant to Bankruptcy Code § 331 Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals entered September 1, 2008. The United States Trustee objected to approximately $44,292 of the fees arguing that as special counsel, the Steptoe firm billed excessively for work spent on preparation of Statement and Schedules, performed services that were duplicative with other debtor's counsel, and the overall benefit conferred in this case by Steptoe's services does not warrant such hefty fees.

The Unsecured Creditors Committee objected to Steptoe's fees primarily based upon a prepetition agreement with GE that provided for payment of debtor's legal fees without a concomitant reduction of the debt owed to GE (no "carve out"). The debtor offered into evidence a January 9, 2009 Letter from GE confirming that:

> At the time of the Agreement was drafted, the parties anticipated that the Section 363 sale would result in a surplus above the Lender's debt. Under such circumstances, the amount of the funds disbursed from the closing escrow on account of Approved Legal fees would have come from the Debtors' estate and would not have constituted a "carveout." As it turned out, the sale proceeds were considerably less than the amount of the Lender's secured claim and the entirety of the sale proceeds became due to the Lender on account of it secured claim. Lender nevertheless permitted disbursement of the Approved Legal Fees from the sale proceeds allocated to the Lender's secured claim. This letter will confirm that the amounts so paid constitute a "carveout" and that such amounts reduced the claim of the Lender against the Debtors.

Upon the presentation of GE's letter, the Committee's objections were no longer relevant, and the Committee's only objection was a legal argument about whether the carved out

2-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:08-bk-07254    Doc 468    Filed 01/22/09    Entered 01/22/09 08:03:07    Desc Main
Document    Page 2 of 6

funds go to debtor's counsel or to all administrative claimants.[2]

Steptoe relied upon the declaration of its attorney Greg Yates wherein he states that the law firms worked to prevent duplication of efforts and that because Steptoe had a prepetition relationship with the debtor, the firm was in a unique position to provide legal services for these debtors with an unusual organizational structure. Furthermore, Mr. Yates' declaration specifically addresses preparation of the Statements and Schedules and explains how the work was divided among the law firms in order to work most effectively. The court heard no proof to the contrary and found Mr. Yates' declaration fully supportive of the fees sought.[3]

The burden of proof on an application for attorneys' fees is on applicant, requiring the applicant to be both complete and descriptive. **In re Sly,** 77 B.R. 115, (Bankr. N.D. Ohio 1986); **Matter of Swartout**, 20 B.R. 102, 9 B.C.D. 313 (Bankr. S.D.Ohio 1982). The court finds that Steptoe met that burden, and the objections of the United States Trustee and Committee are overruled.

---

[2] The Committee also objected that services were provided to "non-debtors" but being billed to the estate, but that objection was withdrawn at the hearing. As to the surcharge legal argument, the court need not address whatever issue the Committee was attempting to raise on an interim basis. **See e.g., In re Engman**, 389 B.R. 36 (Bankr. W.D.Mich., 2008).

[3] Andrew Sloniewsky, Of Counsel to Steptoe and Johnson also provided a Declaration pursuant to 28 U.S.C. § 1746.

3-U.S. Bankruptcy Court, M.D. Tenn.

### **Pachulski Stang Ziel & Jones, LLP's Application**[4]

Pachulski Stang Ziehl & Jones LLP ("PSZJ" or "The Firm"), filed its First Interim Application for Allowance of Compensation and Reimbursement of Expenses Through October 31, 2008 ("First Interim Fee Application"), in accordance with the provisions of the Order Granting Expedited Motion Pursuant to Bankruptcy Code § 331 Establishing Procedures For Interim Compensation And Reimbursement of Expenses of Professionals entered September 16, 2008. The United States Trustee raises two objections to the PSZJ interim fee application:

> First, the cost for preparation of Statements and Schedules is excessive in light of the fact that Kurtzman Carson Consultants LLC ("KCC"), was employed to prepare statements and schedules for the Debtors. Second, the time entries related to the Debtors' Motion to Avoid Appointment of Ombudsman (the "Ombudsman Motion") and the subsequent resolution of the Ombudsman motion are excessive given the lack of due diligence performed by Debtors' counsel related to the Ombudsman Motion.

PSZJ relies upon the declaration of Samuel R. Maizel to explain in detail how the debtors worked with KCC in the preparation of the Statements and Schedules. He relates how PSZJ provided oversight, assistance, and final review of Statements and Schedules:

> It is a mistake to assume that the hiring of a non-professional to assist in the preparation of schedules and SOFA ["Statement of Financial Affairs"] completely eliminates the role of the debtor's counsel; the role of the non-professional is to assist in the preparation by doing those tasks— and they are significant– which are more efficiently and less expensively done by a non-professional.

---

[4] The Committee raised the same objection to PSZJ's application as it did to Steptoe's application concerning the GE "carve out." The court's ruling with respect to the Committee's objection to Steptoe's interim fee application applies equally to PSZJ's interim fee application.

> Most importantly, although KCC was retained to do the schedules and SOFA, by the time KCC was retained, the Firm had already begun gathering the information necessary for their preparation, and substantial progress had been made towards completion of drafts of the schedules and SOFA for the Carolina 7 facilities. Therefore, the Firm and KCC agreed that the Firm would finalize the schedules and SOFA for the Carolina 7 while KCC picked up preparing the schedules and SOFA for the three operating companies. Thus, KCC did not prepare the schedules of SOFA for the Carolina 7 debtors– the Firm did– and there was no duplication of work.

Mr. Maizel's Declaration contains great detail of the division of work among the three debtor law firms and KCC and is fully supports the time entries for which PSZJ is seeking to be compensated.[5] The United States Trustee's objections based on time entries as to preparation of the Statements and Schedules are overruled.

The United States Trustee also objects to the approximately $16,000.00 PSZJ seeks for work done in connection with appointment (or lack thereof) of a Patient Care Ombudsman. The United States Trustee's objection states only:

> The Pachulski Application contains time entries related to the Ombudsman Motion that far exceed any value provided to the estates. The U.S Trustee believes that the requested fees should be reduced by $16,409.00

The United States Trustee suggests that debtors' counsel was not as forthcoming as it should have been in resolving the Ombudsman issue. Again, the court finds that PSZJ's application, the supporting declaration, and this court's experience dealing with the parties

---

[5] Two specific time entries totaling 1.1 hours and in the amount of $225 were picked out of the thousands of time entries as appearing to the Committee to be work related for affiliated non-debtors. Because the Committee professed to the court that they accepted the debtor's statement that no legal work sought to be compensated was performed for non-debtor affiliates, the court sees no reason why this $225 should not be allowed as sought by PSZJ.

5-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:08-bk-07254 Doc 468 Filed 01/22/09 Entered 01/22/09 08:03:07 Desc Main Document Page 5 of 6

and the Ombudsman issue provide ample evidentiary support for PSZJ's fees.[6] Accordingly, the United States Trustee's objection to PSZJ's fee application based on the Ombudsman issue is overruled.

All United States Trustee objections and all Committee objections to the interim fee applications of Steptoe & Johnson and Pachulski Stang Ziehl & Jones LLP are hereby overruled. Respective counsel for Steptoe and PSZJ shall prepare Orders not inconsistent with this Memorandum within ten (10) days of entry of the Memorandum.

**THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

[6] Even if the United States Trustee is correct that debtor's counsel was not as quick as they should have been in responding to informational requests, the court heard no proof of such, and slow responses could have been the result of the loose organizational structure of these affiliated debtors who seem to function, as one party put it, without a "central nervous system."

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.